THOMAS DENNISON, APPELLEE, V. DAILY NEWS PUBLISH-
ING COMPANY, APPELLANT.

FILED MAY 20, 1910. No. 16,508.

1. Appeal: EVIDENCE: LAW OF CASE. On a second appeal to this court
where the evidence is substantially the same as upon a former
appeal, and on such former appeal this court has determined the
probative force and legal effect of such evidence, the evidence
upon that point will not be again reviewed on such second appeal.

2. Libel: INSTRUCTIONS. Instruction number 2, given by the court
upon its own motion, and discussed in the opinion, *held* not
erroneous.

3. ———: ———. While a published statement made in the alterna-
tive will not ordinarily be held to be libelous *per se* unless the
language used in the alternative is of such character, yet if the
statement, taken as a whole, is such that it will not admit of
any other reasonable construction except that the party referred
to in such statement participated in and connived at the doing
of the main act charged, it is not error to instruct the jury that
the entire statement constitutes a libel *per se.*

4. Trial: ALLEGATIONS AND PROOF. The rule that the *allegata et probata*
must agree does not mean that the allegations in the petition
must be in precise language, but .the rule is satisfied if the
allegations of the petition fairly indicate the facts sought to be
proved and the case is tried throughout by both parties upon
the theory that such facts tend to support an issue in the case
as made by the pleadings.

5. Libel: DAMAGES. In an action for damages for libel, the question
of the amount of plaintiff's damages is largely a question for
the jury; and where it appears that such issue has been sub-
mitted to the jury under proper instructions, this court will not
disturb the finding of the jury unless the amount found by the
verdict is clearly excessive.

APPEAL from the district court for Douglas county:
HOWARD KENNEDY, JUDGE. *Affirmed.*

*Baxter & Van Dusen,* for appellant.

*W. J. Connell* and *Walter P. Thomas,* contra,

FAWCETT, J.

This case is before us a second time. The opinion of Mr. Commissioner EPPERSON on the former hearing, reported in 82 Neb. 675, contains such a full and clear statement of the case that we do not deem any further statement necessary. On the second trial in the district court, plaintiff again recovered judgment, and defendant appeals.

Defendant's first contention is: "There was no sufficient evidence to support the allegation that the libel was published of and concerning the plaintiff." It is asserted by plaintiff, and not denied, that plaintiff's testimony upon this branch of the case is the same as that offered on the former trial. This being true, defendant's first contention must fail for the reason that that point is decided adversely to it by our former decision. We there said: "Plaintiff's competent evidence fairly establishes the fact that he is the person referred to by Mr. Thomas. No attempt was made to prove the contrary. Defendant tried the case upon the theory that plaintiff was the person whose character was assailed by the publication. If the case depended upon this assignment of error, we doubt that we could recommend a reversal." We think it must be said of this last trial, as was said of the former, that "defendant tried the case upon the theory that plaintiff was the person whose character was assailed by the publication." Indeed, the closing paragraph of its answer shows such to have been defendant's theory, viz: "Further answering said petition, and as a further defense thereto, this defendant alleges: First, that at and for a long time prior to the 26th day of November, 1904, plaintiff's general reputation in the city of Omaha, Douglas county, state of Nebraska, was bad; that his reputation was that of a gambler, and the associate and protector of the criminal classes, and a pernicious and baleful manipultor of Omaha city politics and a foe of good government." These allegations by defendant coincide so fully with the state-

ments contained in the alleged libel as to furnish strong identification of plaintiff as the person indicated in the publication.

Defendant's second contention is that the court erred in instruction number 2, given by the court upon its own motion. The objection is as to the use of the words "by this same individual", in the closing portion of the paragraph of the instruction objected to. The contention is made that the court thereby substituted the words "by this same individual" for the pronoun "he." We do not think the instruction is susceptible of this criticism. What the court told the jury was: "And that the following statement set out in plaintiff's petition as a part of the alleged libelous publication, to wit: 'That county attorney Shields offended this same individual, and a convict in the Iowa penitentiary says he was offered $3,000 to dynamite Shields' house' likewise was and is libelous *per se,* provided that you shall find that the fair and reasonable interpretation of said words, taken in the sense that is most natural and obvious and in the sense in which those persons to whom the publication should come would be most likely to understand them, is as follows: That county attorney Shields offended this same individual, and a convict in the Iowa penitentiary says he was offered by this same individual $3,000 to dynamite Shields' house." It will be seen that the court, by the words complained of, was not assuming to quote from the alleged libel, but was instructing the jury that the statement contained in the publication would be libelous *per se,* provided the fair and reasonable interpretation of the words used is that the offer of $3,000 to the convict to dynamite Shields' house was made "by this same individual"; referring to the same individual who was the one referred to and aimed at throughout Mr. Thomas' speech. We do not think the court erred in the use of the words referred to, nor do we think that even if they had been improperly used it could be held that they were prejudicial to defendant.

Plaintiff's third contention is that the court erred in giving instruction number 2 on its own motion, wherein the jury were told that "this man either threw the bomb, hired some one to throw it, or knows who did it" was libelous *per se;* and erred in refusing to give instruction number 3 requested by defendant. This, we think, is the only serious question in the case. It is urged by defendant that there is no allegation in the petition that any bomb was thrown, and that there is no evidence thereof in the record; and that, even if a bomb had been thrown, the charge is in the alternative, viz., that the statement, "Who threw the bomb? This man either threw the bomb, hired some one to throw it, or knows who did it", was not libelous *per se* because of the last clause, "or knows who did it"; that a charge that plaintiff knew who threw the bomb was not charging him with anything which would constitute a libel *per se.* While we concede that ordinarily a charge made in the alternative might not be libelous *per se,* we think that the language here quoted, taken in connection with the whole article, is not susceptible of any other reasonable construction except that "this man" either threw the bomb, hired some one to throw it, or had guilty knowldge as to who did it. In other words, we think it fairly charges that "this man" was an active or at least a passive participant in, and connived at, the throwing of that bomb. The court therefore did not err in instructing that this language constituted a libel *per se.*

Plaintiff's fourth contention is that "the court erred in permitting the plaintiff to testify as to the alleged bomb." It is contended that the petition contains no allegation that any bomb was thrown or exploded upon Mr. Thomas' porch or elsewhere. In precise language, this is true; but we think the allegations of the petition are sufficient to support the proof tendered upon that point. The second paragraph of the petition sets out the alleged libel in the reported speech of Mr. Thomas: "When I began this fight as attorney for the civic federation I saw at the

outset a man who stood across the path of good government in this city. It was necessary that this man be driven out of the city. It was because of the fight made on that man that my family has been placed in jeopardy of their lives. * * * Who threw the bomb? This man either threw that bomb, hired some one to throw it, or knows who did it." These allegations of the petition, taken in connection with the fact that the case was tried by both sides upon that theory, support the opening statement in our former opinion, viz.: "On the night of November 22, 1904, in the city of Omaha, the home of Elmer E. Thomas, attorney for the civic federation, while it was occupied by himself and his family, was partially wrecked by the explosion of a dynamite bomb, brought about by some person unknown, with the probable intention of murdering said Thomas." On direct examination, Mr. Dennison was asked if he remembered the incident of the bomb being exploded on the porch of Elmer E. Thomas, to which he answered: "Yes." On cross-examination by defendant's counsel, he was interrogated about this matter in a manner which clearly indicates that the fact that a bomb had been exploded upon Mr. Thomas' porch and that the throwing of that bomb was the cause of the meeting at which Mr. Thomas made the speech published by the defendant was a fact recognized by both sides. We do not think that we ought to adopt any different theory here.

The fifth and last assignment is that the damages awarded are excessive and were entered by the jury under the influence of passion and prejudice. This branch of the case was submitted to the jury upon instructions, the correctness of which are not questioned by defendant. We cannot say as a matter of law that their verdict is not sustained by the evidence. Two juries have found substantial damages for the plaintiff. Two district judges who heard the evidence have denied new trials and entered judgments upon those verdicts. Under the circum-

stances, we must decline to disturb the verdict on the ground that it is excessive.

Finding no prejudicial error in the record, the judgment of the district court is

AFFIRMED.

ROSE, J., took no part in the decision.

SEDGWICK, J., dissenting.

I cannot agree that the allegation of the answer quoted in the opinion furnishes an identification of the plaintiff as the person concerning whom the libel was published. A defendant may plead as many defenses as he has, under the express provision of the code. It is not inconsistent to plead that the supposed libel was not published of and concerning the plaintiff, and in the same answer allege that the plaintiff has the precise characteristics defined in the libel.

If a libel charges larceny and is really published of and concerning A, and B sues supposing it was published concerning him, the defendant would clearly be entitled to defend on both grounds; that B had in fact been guilty of larceny, and that he was not the party concerning whom the supposed libel was published. In such case to allege in the answer that B was in fact a thief would not identify him as the person concerning whom the supposed libel was published.

The right given by statute to plead consistent defenses ought not to be abridged by the courts. It is for this reason that I consider it my duty to dissent from that part of the reasoning of the opinion and not because it necessarily affects the conclusion reached, in which I concur.